# In the United States District Court
# for the Southern District of Georgia
# Savannah Division

MERCHANT IVORY PRODUCTIONS
(USA), INC., and JAMES IVORY,

    Plaintiffs,

    v.

JOHN GILBERT DONALDSON, JR.,

    Defendant.

CV 414-240

## ORDER

Presently before the Court is Defendant John Gilbert Donaldson, Jr.'s motion to dismiss Plaintiffs Merchant Ivory Productions and James Ivory's Complaint. Dkt. no. 10. Defendant moves to dismiss the Complaint under a variety of defenses pursuant to Federal Rule of Civil Procedure 12(b), namely: Rule 12(b)(1) for lack of subject-matter jurisdiction; Rule 12(b)(2) for lack of personal jurisdiction; Rule 12(b)(3) for improper venue; and Rule 12(b)(5) for insufficient service of process. For the reasons stated below, Defendant's motion to dismiss is **DENIED**.

## FACTUAL BACKGROUND

The following facts are taken solely from Plaintiffs' Complaint (Dkt. no. 1, "Compl.").

Plaintiff Merchant Ivory Productions France (MIP France) is a société à responsabilité limitée (limited liability company) organized under the laws of France and located in Paris, France. Compl. ¶ 8. Merchant Ivory Productions USA (MIP USA) and Merchant Ivory Productions UK (MIP UK) collectively own 100% of MIP France. Id. ¶¶ 10-11. Plaintiff James Ivory is the beneficial owner of MIP UK and MIP USA, and is thus the beneficial owner of MIP France (henceforth "Merchant Ivory"). Id. ¶ 12.

Merchant Ivory is a film production company. Id. ¶ 13. Defendant John Gilbert Donaldson, Jr. was a gérant (director) of Merchant Ivory and was co-director with Plaintiff Ivory until 2013. Id. ¶ 14. As a co-director, Defendant managed Merchant Ivory's day-to-day operations. Id. ¶ 15.

In 2008 and early 2009, Plaintiff Ivory decided to have Defendant sell an apartment and an office that Merchant Ivory owned in Paris. Id. ¶ 19. Defendant lived part-time in Paris, and was thus tasked with showing the properties to brokers and coordinating any prospective sales. Id. The office eventually sold for €340,000 (converting, at the time, to about $472,600), and the apartment eventually sold for €2,900,000 (or about $3,886,000). Id. ¶¶ 20-21. Merchant Ivory used most of the proceeds to pay off its creditors. Id. ¶ 22. But after paying

AO 72A
(Rev. 8/82)

its debts, Merchant Ivory calculates that approximately $650,980.05 should have remained. Id. ¶ 23.

After the sales of the office and apartment, Merchant Ivory made repeated requests to Defendant for a full accounting of the sale proceeds. Id. ¶ 24. While Defendant promised to provide documentation of the proceeds, he never did. Id. ¶¶ 25-27. Instead, he first suggested that the French government had taken the balance of the proceeds, but he never produced any documentation to support this assertion. Id. Despite further requests, he later claimed that certain bank statements were never received from the bank. Id. Defendant eventually ceased all communications with Merchant Ivory. Id.

As a director, Defendant was a signatory to Merchant Ivory's bank account in France. Id. ¶ 29. After Defendant stopped communicating with Plaintiffs, Plaintiffs retained local counsel in France who was able to obtain copies of the French bank account's statements and cancelled checks. Id. ¶¶ 30-32. Plaintiffs believe the statements and cancelled checks show that Defendant misappropriated funds by writing himself checks, withdrawing cash, and initiating wire transfers from the bank in France to an account Defendant held with the Savannah Bank in Savannah, Georgia. Id. ¶ 33. In addition to these known misappropriations, Plaintiffs believe Defendant is responsible for additional wire transfers and disbursed checks amounting to

$188,536.25 and $340,478.97, respectively. Id. ¶ 34. In all,
Plaintiffs claim Defendant misappropriated at least $260,889.89.
Id ¶ 33.

Plaintiffs claim that, since discovering the
misappropriations, Defendant has cut off all communications with
Plaintiffs and has not provided any explanation for the
withdrawals. Id. ¶ 36. Plaintiffs bring four claims against
Defendant: breach of fiduciary duty, demand for an accounting,
misappropriation of corporate assets, and negligence in
management pursuant to French law. Id. ¶¶ 37-64.

## DISCUSSION

### I.    Subject-Matter Jurisdiction

Defendant moves to dismiss this action for lack of subject-
matter jurisdiction under Federal Rule of Civil Procedure
12(b)(1). A motion to dismiss brought pursuant to Rule 12(b)(1)
of the Federal Rules of Civil Procedure may challenge the
court's subject-matter jurisdiction based on the face of the
pleadings or the substantive facts of the case. Morrison v.
Amway Corp., 323 F.3d 920, 924 n.5 (11th Cir. 2003). When
addressing a facial challenge, allegations in the plaintiff's
complaint are taken as true, and the court determines whether
the complaint sufficiently alleges a basis for subject-matter
jurisdiction. Scarfo v. Ginsberg, 175 F.3d 957, 960 (11th Cir.
1999) (citing Lawrence v. Dunbar, 919 F.2d 1525, 1529 (11th Cir.

1990)). The complaint may be dismissed on a facial attack only "if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations." Jackson v. Okaloosa Cnty., Fla., 21 F.3d 1531, 1534 (11th Cir. 1994) (citation omitted).

When addressing a factual challenge, a court "is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case." See Lawrence, 919 F.2d at 1528-29 (quoting Williamson v. Tucker, 645 F.2d 404, 412 (5th Cir. 1981)); see also Scarfo, 175 F.3d at 960 ("[M]atters outside the pleadings, such as testimony and affidavits, are considered."). Therefore, the presumption of truthfulness afforded a plaintiff under Federal Rule of Civil Procedure 12(b)(6) does not attach to a factual challenge to the court's subject-matter jurisdiction. See Scarfo, 175 F.3d at 960.

Defendant makes absolutely no argument regarding his motion to dismiss for lack of subject-matter jurisdiction, so the court is unable to tell if the challenge is either facial or factual. Either by looking only to the allegations in the Complaint or by considering evidence outside of the pleadings, it is clear that the Court has subject-matter jurisdiction over this action. The amount in controversy exceeds $75,000, and Defendant's counsel stated at a hearing before the Court that there is diversity jurisdiction. See Compl. at 10 (seeking actual damages in the

amount of $260,889.89 and punitive damages of at least
$1,000,000); Dkt. no. 17 ("Hearing Trans."), 7:24-8:1. Thus,
this Court has jurisdiction over the action pursuant to 28
U.S.C. § 1332.

## II. Standard of Proof Governing the Remaining Rule 12(b) Motions

In addition to subject-matter jurisdiction, Defendant moves
to dismiss Plaintiffs' Complaint for lack of personal
jurisdiction, improper venue, and ineffective service of
process. See Fed. R. Civ. P. 12(b)(2), 12(b)(3), 12(b)(5). These
grounds for dismissal share the same standard of proof.

> In the context of such motions in which no evidentiary
> hearing is held, the plaintiff must present only a
> prima facie showing of venue and personal
> jurisdiction. . . . The facts as alleged in the
> complaint are taken as true, to the extent they are
> uncontroverted by defendants' affidavits. . . . In
> addition, when there is a battle of affidavits placing
> different constructions on the facts, the court is
> inclined to give greater weight, in the context of a
> motion to dismiss, to the plaintiff's version . . . .

Delong Equip. Co. v. Wash. Mills Abrasive Co., 840 F.2d 843, 845
(11th Cir. 1988) (citations omitted); see also Meier ex rel
Meier v. Sun Intern. Hotels, Ltd., 288 F.3d 1264, 1268-69 (11th
Cir. 2002) (applying this evidentiary standard to motions to
dismiss for lack of personal jurisdiction); Kammona v. Onteco
Corp., 587 F. App'x 575, 578 (11th Cir. 2014) ("In assessing the
validity of service of process, the standards of proof governing

motions to dismiss for lack of personal jurisdiction are applicable.") <u>cert. denied</u>, 135 S. Ct. 2316, (2015).

### III. Personal Jurisdiction

Defendant argues that the Court lacks personal jurisdiction over him because he does not have minimum contacts with Georgia and, even if he did, other factors weigh against personal jurisdiction.

"A federal court sitting in diversity undertakes a two-step inquiry in determining whether personal jurisdiction exists: the exercise of jurisdiction must (1) be appropriate under the state long-arm statute and (2) not violate the Due Process Clause of the Fourteenth Amendment to the United States Constitution." <u>United Techs. Corp. v. Mazer</u>, 556 F.3d 1260, 1274 (11th Cir. 2009).

#### a. Defendant has Transacted Business Within the State Pursuant to Georgia's Long-Arm Statute

In construing a state long-arm statute in a personal jurisdiction analysis, the court must interpret the statute as would the state's Supreme Court. <u>See</u> <u>id.</u> The relevant portions of Georgia's long-arm statute state:

> A court of this state may exercise personal jurisdiction over any nonresident or his or her executor or administrator, as to a cause of action arising from any of the acts, omissions, ownership, use, or possession enumerated in this Code section, in the same manner as if he or she were a resident of this state, if in person or through an agent, he or she:

AO 72A
(Rev. 8/82)

(1) Transacts any business within this state;

(2) Commits a tortious act or omission within this state, except as to a cause of action for defamation of character arising from the act;

(3) Commits a tortious injury in this state caused by an act or omission outside this state if the tort-feasor regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered in this state. . . .

Ga. Code Ann. § 9-10-91.

To exercise personal jurisdiction over a nonresident who transacts business within Georgia, the court must find:

first, the nonresident must have purposefully done an act or consummated a transaction in Georgia; second, the cause of action must arise from or be connected with such act or transaction; and third, the exercise of jurisdiction by the courts of this state must not offend traditional fairness and substantial justice.

Gateway Atlanta Apartments, Inc. v. Harris, 660 S.E.2d 750, 757 (Ga. Ct. App. 2008). Under the first prong, a party can "consummate" a transaction in Georgia by utilizing a Georgia bank's resources, even when he initiates the transactions out of state, so long as the transaction has a "substantial" economic effect. See Ga. R.R. Bank & Trust Co. v. Barton, 315 S.E.2d 17, 19 (Ga. Ct. App. 1984) (signing, in South Carolina, promissory notes from a Georgia bank is transacting business in the State for purposes of long-arm jurisdiction where amount of loan was $125,000); see also Burger King Corp. v. Rudzewicz, 471 U.S.

AO 72A
(Rev. 8/82)

462, 476 ("[I]t is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and *wire communications* across state lines, thus obviating the need for physical presence within a State in which business is conducted." (emphasis added)); Diamond Crystal Brands, Inc. v. Food Movers Intern., Inc., 593 F.3d 1249, 1249 (noting that a defendant need not physically enter Georgia to "transact any business" in the state). The first and second prongs of the personal jurisdiction analysis determine whether the nonresident has established minimum contacts with the state. Gateway Atlanta Apartments, Inc., 660 S.E.2d at 757. The "due process" prong "requires that the nonresident have performed purposeful acts to tie itself to Georgia, and these minimum contacts may not be merely random, fortuitous, or attenuated." Id. (quotations omitted).

Here, Plaintiffs allege that Defendant wired misappropriated funds to a bank account in Savannah, Georgia. Plaintiff Ivory alleged in an affidavit that Defendant was the only person in France with the power to disburse checks, issue wire transfers, or withdraw the funds that Plaintiffs claim Defendant misappropriated. Dkt. no. 11-2, ("Ivory Aff.") ¶ 2. Additionally, Ivory stated that of the misappropriated funds, bank account statements show that Defendant wired at least $22,368 to the Savannah Bank in Georgia. Id. ¶ 3. Defendant

AO 72A
(Rev. 8/82)

allegedly directed a substantial sum of misappropriated funds to a Georgia bank, and the present cause of action directly arises from and is connected to these transactions. Thus, Defendant has purposefully established minimum contacts with the state of Georgia, and the cause of action arises from these contacts. These purposeful transactions are neither "random," "fortuitous," or "attenuated," and exercising personal jurisdiction over Defendant will not offend traditional notions of fairness and substantial justice under Georgia law.

### b. Due Process Under the Fourteenth Amendment

Federal case law requires that a federal court sitting in diversity undertake a Fourteenth Amendment analysis in addition to applying the forum state's long-arm statute. United Techs. Corp., 556 F.3d at 1274 (11th Cir. 2009). Georgia already requires a due process analysis in applying its long-arm statute. See Gateway Atlanta Apartments, Inc., 660 S.E.2d at 757. Even so, these two inquiries are not "one and the same," and this Court will conduct a constitutional analysis independent of the statutory long-arm analysis to determine whether personal jurisdiction over the Defendant is appropriate in this case. Diamond Crystal Brands, 593 F.3d at 1262-63.

As the Eleventh Circuit has observed,

The Due Process Clause protects an individual's liberty interest in not being subject to binding judgments imposed by foreign sovereigns. The heart of

> this protection is fair warning—the Due Process Clause requires that the defendant's conduct and connection with the forum State [be] such that he should reasonably anticipate being haled into court there. Therefore, states may exercise jurisdiction over only those who have established certain minimum contacts with [the forum] such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

Id. at 1267 (internal quotations and citations omitted) (citing

Burger King Corp., 471 U.S. at 472-73; Helicopteros Nacionales

de Columbia S.A. v. Hall, 466 U.S. 408, 414 (1984)). Thus,

personal jurisdiction comports with federal due process when the

nonresident defendant (1) has purposefully established minimum

contacts with the forum state, and (2) the exercise of

jurisdiction will not offend traditional notions of fair play

and substantial justice. Delong Equip., 840 F.2d at 853.

### i. Defendant Has Purposefully Established Minimum Contacts With the State of Georgia

Three inquiries inform the minimum contacts analysis:

> First, the plaintiff's cause of action must arise out of, or relate to, the nonresident defendant's contacts with the forum state. Second, the contacts must show that the nonresident defendant purposefully availed itself of the privilege of conducting activities within the forum state. Third, the defendant's contacts must demonstrate that the nonresident could reasonably anticipate being haled into court in the forum.

Paul, Hastings, Janofsky & Walker, LLP v. City of Tulsa, OK, 245

F. Supp. 2d 1248, 1255 (N.D. Ga. 2002) (citing Vermeulen v.

Renault, U.S.A., Inc., 985 F.2d 1534, 1546 (11th Cir. 1993)).

First, as discussed above, Plaintiffs' cause of action arises out of Defendant's contacts with the state. Plaintiffs bring misappropriation claims, and allege that Defendant wired $22,368 of misappropriated funds to a bank in Savannah, Georgia.

Second, the Complaint and supporting affidavits allege that Defendant intentionally and repeatedly wired the misappropriated funds to the Savannah Bank. If true, Defendant would have purposefully availed himself of the opportunity to conduct activities in Georgia on a continuing basis. Defendant had a world of banks to choose from, and the pleadings allege that he chose Savannah Bank of Savannah, Georgia.

Third, Defendant's contacts with the state of Georgia are such that Defendant should have anticipated being haled into court in the State of Georgia. While jurisdiction is not proper when it is the result of "'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the 'unilateral activity of another party or a third person,'" personal jurisdiction arises "where the contacts proximately result from actions by the defendant *himself* that create a 'substantial connection' with the forum State." Burger King Corp., 471 U.S. at 475-76 (emphasis in original) (citations omitted). Here, Defendant allegedly wired a substantial amount of money to a Georgia bank on at least three different occasions. He availed himself of the privilege of using a Georgia-based institution's financial

AO 72A
(Rev. 8/82)

conduits, and thus enjoyed the benefits and protections of Georgia's laws. It is thus "presumptively not unreasonable to require him to submit to the burdens of litigation in [Georgia] as well." See id. at 476.

For these three reasons, Defendant has the requisite minimum contacts with Georgia.

### ii. Traditional Notions of Fair Play and Substantial Justice Allow Personal Jurisdiction Over Defendant

Once it is shown that the defendant has purposefully established minimum contacts in the forum state, a defendant must make a "compelling case" that the exercise of jurisdiction would violate traditional notions of fair play and substantial justice. Diamond Crystal Brands, Inc., 593 F.3d at 1267. The analysis requires courts to look to "the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several states in furthering fundamental substantive social policies." Id. at 1274 (citations omitted).

Defendant argues that litigating this matter in Georgia would place an unreasonable burden on him because he lives and works in France. He also argues that Plaintiffs reside in New

York, and thus litigation in Georgia would not be convenient for either party. Defendant's arguments have some merit and are supported by the evidence: Defendant and his father both say he has "lived and worked in Paris, France" for the past 20 years, (Dkt. nos. 15-1 ¶ 4, 10-1 ¶ 8 ); they both claim he has not "resided" in Savannah since 1979, (Dkt. nos. 15-1 ¶ 2, 10-1 at ¶ 7); and they both claim that he lived in New York prior to moving to France, (Dkt. nos. 15-1 ¶ 3, 10-1 ¶ 9). However, this evidence is contradicted by the video and audio evidence that Plaintiffs submitted, recorded on November 6, 2014, showing Defendant's father unequivocally stating that Defendant "lives here," at Defendant's father's home in Savannah, Georgia. Thus, regardless of where Defendant and his father affie he "resides," "lives," and "works," there is contradictory evidence on the record showing that Defendant "lives" in Savannah, Georgia. The Court must resolve this contradiction in the evidence in favor of Plaintiffs. Meier, 288 F.3d at 1269. Because Defendant haunts Savannah frequently enough for his father to claim he lives there, litigating this case in Savannah will not inconvenience Defendant as much as he suggests.

Furthermore, while Plaintiffs have suggested that Savannah will not be the most convenient forum for them, they have maintained that the Southern District of Georgia will be a proper venue if Defendant refuses to consent to transfer the

case to the State of New York. Dkt. no. 20-6, p. 11. To the Court's knowledge, Defendant has not responded to this proposal. Thus, the Court will not weigh any inconvenience to Plaintiffs against them in the "traditional notions of fair play and substantial justice" analysis.

And while neither Plaintiffs nor (as he purports) Defendant are Georgia residents, Georgia still has an interest in overseeing the resolution of this case. Part of Plaintiffs' injuries occurred in this State via a local financial institution. See Phillips v. Consol. Pub. Co., No. CV 213-069, 2014 WL 1319357, at *9 (S.D. Ga. Mar. 31, 2014) ("a state has an interest in redressing injuries that occur within that state."). Additionally, "relevant witnesses and evidence undoubtedly exist in Georgia" by way of Savannah Bank. See TRS & Assos., Inc. v. Document Imaging Tech, Inc., No. CV 108-03264, 2009 WL 2778256, at *8 (N.D. Ga. Aug. 25, 2009). Finally, Plaintiffs have expressed an interest in "chasing the money," as they say, and their interests thus rest in resolving this matter in Georgia.

The inconvenience to Defendant does not outweigh these considerations. This Court's exercise of personal jurisdiction over Defendant will not violate traditional notions of fair play and substantial justice, and thus will not violate Defendant's Fourteenth Amendment due process rights. Personal jurisdiction over the Defendant is appropriate in this case.

AO 72A
(Rev. 8/82)

## IV.  Venue

Defendant also moves to dismiss this action for improper venue, and Federal Rule of Civil Procedure 12(b)(3) authorizes such a motion. Defendant, however, offers no argument or discussion as to why the Southern District of Georgia is an improper venue for this case, and perhaps has only stated the defense as a variation of his personal jurisdiction argument. In any event, the controlling law clearly permits venue in the Southern District of Georgia.

Rule 12(b)(3) authorizes dismissal only when venue is "improper" in the forum in which it is brought. <u>Atlantic Marine Const. Co., Inc. v. U.S. Dist. Ct. for W. Dist. of Tex.</u>, 134 S. Ct. 568, 577 (2013). 28 U.S.C. § 1391 governs this analysis and allows civil actions to be brought in

>(1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located;

>(2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or

>(3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b). "When venue is challenged, the court must determine whether the case falls within one of the three

categories set out in § 1391(b). If it does, venue is proper; if it does not, venue is improper, and the case must be dismissed or transferred under § 1406(a)." Atlantic Marine Const., 134 S. Ct. at 577.

While some evidence suggests that Defendant "lives" in Savannah, that characterization of the facts is hotly contested. The first category in § 1391(b), then, will not directly determine the proper venue for this case.

The second category is more promising. Section 1391(b)(2) allows venue in a jurisdictional district "in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated". § 1391(b)(2). By § 1391(b)(2)'s terms, then, "[o]nly the events that directly give rise to a claim are relevant. And of the places where the events have taken place, only those locations hosting a 'substantial part' of the events are to be considered." Jenkins Brick Co. v. Bremer, 321 F.3d 1366, 1371 (11th Cir. 2003) (construing an earlier iteration of § 1391(b)(2)). The question becomes, then: Do three wire transactions to a bank in Savannah, totaling some $22,368 of an alleged misappropriation equal to at least $260,889.89, amount to a "substantial part of the events" giving rise to the claim?

AO 72A
(Rev. 8/82)

On one hand, the evidence and allegations suggest that the portion of the misappropriation directed to Savannah could be less than 10% of the total sum. While $22,368 may be a substantial amount of money, it is a relatively insubstantial portion of a sum totaling at least $260,889.89. Similarly, while three wire transactions to Savannah bank could, by themselves, represent a "substantial" misappropriation of funds, those three transactions may not constitute a substantial part of the conduct giving rise to the full misappropriation claim.

On the other hand, the Savannah transactions are significant because we know so few details about the balance of the defalcation. While the amounts and frequency of the Savannah transactions may not be "substantial" in light of the total misappropriation, the amounts and frequency of these wires are substantial when compared to the available evidence of how much and by what means Defendant misappropriated the balance of the funds. Except for certain cash withdrawals in France, there is insufficient information in the record to make an adequate comparison of the other alleged instances of misappropriation with the Savannah Bank transactions such that the Court may determine which transactions are more "substantial."

The France cash withdrawals, though, warrant further attention. In a demand letter it sent to Defendant, Merchant

Ivory identifies several problems it found in its account statements for which it wants an accounting:

> First, there are three wire transfers to the Savannah Bank, totaling $44,094.62.[1] Second, from May 2009, to June 2011, there were sixty (60) cash withdrawals made, totaling $60,300. Notably, all of these cash withdrawals were made at two HSBC branch locations, Rue Condorcet and Rue Madeleine, which upon our information and belief are located near your [Parisian] apartment.

Compl. p. 14. Thus, while the Savannah transactions were substantial in some respects, they are less substantial than the withdrawals in France. But § 1391(b)(2) does not require venue to rest in the "best" district—the appropriate question is whether the district the plaintiff chose has personal jurisdiction over the defendants, whether or not other forums had greater contacts. Lisevald v. Marcus, 173 F.R.D. 689, 700 (M.D. Fla. 1997) (quoting Setco Enters. Corp. v. Robbins, 19 F.3d 1278, 1281 (8th Cir. 1994)). Venue in this case, then, is appropriate under § 1391(b)(2).[2]

## V. Service of Process

Finally, Defendant moves to dismiss the Complaint for insufficient service of process under Rule 12(b)(5). Under Rule 4(m), a plaintiff must serve the summons and a copy of the

---

[1] The demand letter states that the Savannah wires totaled $44,094.62, but Plaintiff Ivory's affidavit claims they totaled "at least" $22,368.00. Compare Compl. p. 14, with Ivory Aff. ¶ 3. This discrepancy is not explained, but it is immaterial to this analysis.

[2] The Court does not need to further address the question of whether France would be a "better" forum at this time, as Defendant has not invoked the doctrine of forum non conveniens.

AO 72A
(Rev. 8/82)

complaint on a defendant within 120 days after filing the action. The plaintiff may do so by "leaving a copy of [the summons and complaint] at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there." Fed. R. Civ. P. 4(e)(2)(B). Or, the plaintiff may serve the defendant by "following state law for servicing a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). To that end, Georgia law also allows service of the summons and complaint "by leaving copies thereof at the defendant's dwelling house or usual place of abode with some person of suitable age and discretion then residing therein." Ga. Code Ann. § 9-11-4(e)(7).

Here, Plaintiffs' Process Server left copies of the Complaint and summons at Defendant's father's house in Savannah, Georgia after having the following exchange with the father:

| | |
|---|---|
| Process Server: | I'm looking for John Donaldson— |
| Mr. Donaldson Sr.: | Right. |
| Process Server: | —Gilbert. |
| Mr. Donaldson Sr.: | Right. |
| Process Server: | Are you him? |
| Mr. Donaldson Sr.: | Yeah. John Gilbert Donaldson. |
| Process Server: | I think it's for Junior. |
| Mr. Donaldson Sr.: | Okay. He lives here. |
| Process Server: | Okay. Are you his dad? |
| Mr. Donaldson Sr.: | Yes. |
| Process Server: | Okay. Can I just leave it with you? |
| Mr. Donaldson Sr.: | Do what? |
| Process Server: | I'll just leave it with you. |
| Mr. Donaldson Sr.: | Okay. That's fine. |

```
Process Server:      Thank you very much. You have a
                     good day.
Mr. Donaldson Sr.:   You too.
```

See Dkt. no. 20-6, p. 7. The Court reviewed an audio and video recording of this conversation at a motions hearing on May 14, 2015. See Dkt. no. 17 (Hearing Transcript), 17:23-18:14. This evidence suggests that Defendant "lived" with his father in Savannah on November 6, 2014.

Defendant attempts to rebut this evidence with affidavits. First, his father's affidavit states that, despite his statements on the video, "At the time the papers . . . were delivered to Affiant on November 6, 2014, John Gilbert Donaldson, Jr., did not reside in Affiant's household . . . [in] Savannah, Georgia," and that "For the past twenty (20) years, John Gilbert Donaldson, Jr., has lived and worked in Paris, France, and has not maintained a residence in the State of Georgia." Dkt. no. 10-1, ¶¶ 6, 8. In his own affidavit, Defendant reiterates that he "has not lived in or been a resident of the State of Georgia since August of 1979." Dkt. no. 15-1, ¶ 2. Defendant concedes, though, that his "visits to Savannah, Georgia to see his father or to attend events like the Savannah Film Festival are infrequent and have nothing to do with the allegations of the Plaintiff's Complaint." Id. ¶ 7.

Before the Court, then, is a battle of affidavits. As such, "the court is inclined to give greater weight, in the context of

AO 72A
(Rev. 8/82)

a motion to dismiss, to the plaintiff's version" of the facts.
Delong Equip., 840 F.2d at 845. This is not to say that
Defendant's affidavits carry no weight at all. But his father's
affidavit stating that Defendant has not resided in Savannah
since 1979 is, frankly, unpersuasive on the heels of a video and
audio recording of him explicitly stating that Defendant "lives"
at his house in Savannah as of November, 2014. Additionally,
Defendant had the opportunity in his own affidavit to more fully
explain his presence in Savannah on that date. The Court does
not necessarily believe that Defendant's presence in the
Southern District of Georgia on November 6, 2014 alone should
subject him to local service of process or personal
jurisdiction. However, Defendant's affidavits fail to provide
the Court with information it would need to fully contextualize
his presence in Savannah on that date or to qualify his father's
recorded statement. If Defendant had provided more details about
the length, frequency, or regularity of his visits to Savannah,
the Court may have been able to determine whether his presence
would make him a denizen of Savannah or merely a sojourner. As
it stands, though, Defendant's own affidavit amounts to nothing
more than conclusory assertions designed to undermine his
father's prior statements.

Despite their contradictions, to the extent the affidavits
plausibly show that Defendant resides somewhere other than

Savannah, Georgia, the Court notes that a person can have more than one dwelling or usual place of abode, provided that each dwelling place contains sufficient indicia of permanence. See Nat'l Dev. Co. v. Triad Holding Corp., 930 F.2d 253, 257 (2d Cir. 1991). Evidence that Defendant "lives" in Savannah is sufficient indicia of permanence here absent a more detailed showing of how often or how frequently Defendant actually lives in the city. Furthermore, courts usually construe Rule 4(e)(2)(B) liberally where a defendant has notice of the suit and is living at the place of service when served. Nowell v. Nowell, 384 F.2d 951, 953 (5th Cir. 1967).[3] And here, Defendant's counsel conceded at the motions hearing that Defendant had received notice of the suit, Dkt. no. 17, 4:3-4, and the evidence suggests that he "lived" at his father's house when he was served there.

On balance, the Court finds that Plaintiffs' evidence of where Defendant "lives" is more persuasive than Defendant's rebuttal affidavits. Service on Defendant was proper in the Southern District of Georgia, and Defendant's Rule 12(b)(5) motion must be denied.

---

[3] Decisions of the old Fifth Circuit Court of Appeals handed down before September 30, 1981 are binding precedent on district courts in the Eleventh Circuit. Bonner v. City of Prichard, Ala., 661 F.2d 1206, 1207 (11th Cir. 1981).

AO 72A
(Rev. 8/82)

**CONCLUSION**

Plaintiffs allege that Defendant sent misappropriated funds to Savannah, Georgia, and they then served him in Savannah. Venue, personal jurisdiction, and service of process are all proper in the Southern District of Georgia. Additionally, subject-matter jurisdiction is proper pursuant to 28 U.S.C. § 1332. Thus, Defendant's motion to dismiss for lack of subject-matter jurisdiction, improper venue, lack of personal jurisdiction, and improper service of process (Dkt. no. 10) is **DENIED**.


**SO ORDERED**, this 1ST day of September, 2015.


LISA GODBEY WOOD, CHIEF JUDGE
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF GEORGIA

AO 72A
(Rev. 8/82)